UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA



FILED
MAY 1 0 1995
ROBERT D. DENNIS, CLERK
U.S. DIST. COURT WESTERN DIST. OF OKLA.
BY_____ DEPUTY

| | |
|---|---|
| LENA R. GAINES-TABB; KIMBERLY BURT; STEVEN ABEL; and NAEEM KHAN, and all others similarly situated, | CIVIL ACTION |
| Plaintiffs, | |
| vs. | CIV-95  719 R<br>CASE NO.: _____ |
| ICI EXPLOSIVES U.S.A., INC., a Delaware Corporation, | |
| Defendant. | |

DOCKETED

## CLASS ACTION COMPLAINT

NOW INTO COURT, through undersigned counsel, come Lena R. Gaines-Tabb, Kimberly Burt, Steven Abel and Naeem Khan who through this complaint respectfully represent that they have injuries to their person and property common to all those similarly situated, having incurred damages from, and arising out of, the bombing of the A.P. Murrah Building in Oklahoma City, Oklahoma on April 19, 1995 as a result of the negligence and breaches of duty under manufacturers product liability of the defendant. The representative plaintiffs, therefore, seek to represent and prosecute all claims through class action proceedings on behalf of all those persons similarly situated who are citizens and residents of the states and territories of the United States of America, for the following reasons, to-wit:

I.

JURISDICTION:

The jurisdiction of this honorable Court is founded upon 28 U.S.C. § 1332.

II.

PARTIES:

PLAINTIFFS AND PROPOSED CLASS REPRESENTATIVES:

The plaintiffs herein are Lena R. Gaines-Tabb, Kimberly Burt, Steven Abel, and Naeem Kahn, all citizens of the State of Oklahoma. All such plaintiffs further appear as proposed class representatives on behalf of all those individuals similarly situated.

III.

DEFENDANT:

The defendant, ICI Explosives U.S.A., Inc., is and has been a manufacturer, designer, promoter, distributor and seller of ammonium nitrate fertilizer which based upon information and belief was used by Timothy McVeigh in testing and building the bomb which caused the explosion that damaged the A.P. Murrah Building, its occupants, surrounding buildings and their occupants as well as other persons and property within a wide area surrounding the A.P. Murrah Building.

ICI Explosives U.S.A., Inc. is a Delaware corporation with its principle place of business in Texas, doing business in the Western Federal District of Oklahoma during all material times herein and designer, manufacturer, promoter and seller of the above said ammonium nitrate, which defendant placed in the stream of commerce and which caused damages in the Western District of Oklahoma during all material times herein.

2

ICI Explosives U.S.A., Inc. was at all times complained of and is at the time of the filing of this lawsuit domesticated in the State of Oklahoma and has designated the CT Corporation as its registered service agent.

IV.

This action is brought in memory of all of those who have been killed or injured by the bombing of the A.P. Murrah Building as well as those who have been killed and injured in prior bombings where ammonium nitrate car or truck bombs have been used. Further, this action is brought in hopes to prevent others from being killed or injured in the future by deterring manufacturers of ammonium nitrate fertilizer from marketing such products without an additive to reduce or eliminate the explosive potential of such product.

V.

THE CLASS:

The proposed class representatives and named plaintiffs seek to represent the following class:

All citizens, residents and entities of the states and territories of the United States of America who have suffered personal injuries and/or property damages and any and all other damages as a result of the bombing of the A.P. Murrah Building and surrounding areas and who have sustained or may in the future sustained damages thereby and all those individuals who may claim loss of consortium from or wrongful death of an individual relative who was injured or killed in the blast.

3

VI.

Concentrating this litigation in one forum will aid with judicial economy and efficiency and promote parity among the claims of individual class members as well as judicial consistency.

VII.

The claims of the proposed class representatives are typical of a cross section of the class and of the claims they seek to represent.

VIII.

Each of the plaintiffs and proposed class representatives sustained physical and psychological personal injuries and damage to their property as a result of the blast and have experienced extreme mental anguish and grief.

IX.

The claims of each plaintiff and proposed class representative exceed $50,000, the jurisdictional limit of this court.

X.

The prosecution of separate actions by class members against the defendant would create a risk of:

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interest of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interest.

XI.

A class action is superior to other available methods for the fair and efficient adjudication of this litigation, since individual joinder of all members of the class is impracticable. Even if every putative class member herein could afford individual litigation, it would be unduly burdensome on the Courts in which the individual litigations would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by defendant's product. By contrast, the class action device presents far and fewer management difficulties and provides the benefits of unitary adjudication, economies of skill, and comprehensive supervision by a single court.

XII.

The class is so numerous that joinder of all members is impractical.

XIII.

Plaintiffs will fairly and adequately represent and protect the interest of all members of the described class. Plaintiffs have retained attorneys experienced in multi-party complex product liability and negligence litigation to represent the class members herein.

XIV.

The actual number of individuals who will elect to maintain their claims through this litigation will be better established after notification to all absentees that this action is pending.

XV.

The questions of fact, as alleged herein, and issues of law, as pled herein, arise out of the claims made by the proposed class herein and are common to all members of the class.

XVI.

Common questions of law and fact as asserted herein predominate over individual questions of causation of individual damages and the monetary compensation therefore and defenses of the defendant are generally applicable to the entire class rather than to individual claims.

XVII.

Accordingly, class certification is appropriate under Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3), and (e) and the class action vehicle is the superior method for handling this litigation.

XVIII.

Plaintiffs' injuries were caused by the strict liability, products liability, negligence and violations of customary and usual practices and complicity through either action or non-action with other manufacturers and sellers of fertilizer grade ammonium nitrate to withhold from the market technological advancements to make fertilizer grade of ammonium nitrate safe. Furthermore, defendant's act constitutes intentional and negligent infliction of emotional distress.

XIX.

Defenant is liable for punitive damages for its reckless or wanton or willful disregard for the public's safety in the manufacturing, promoting, distributing and selling of fertilizer grade of ammonium nitrate without the additive described herein. The

punitive damages sought are for the purpose of deterring the future marketing or such ammonium nitrate fertilizer by this defendant and others without the additive described herein in order to save the lives of future potential bombing victims.

XX.

The damages to the named plaintiffs and all others similarly situated include, but are not limited to, physical injury; mental and emotional distress; pain and suffering; economic loss, including medical expenses and lost wages; inconvenience; stigmatization; loss of consortium including support, services, sex and society; continual need for medical monitoring; and property and business damages and resulting losses.

XXI.

It has been widely reported and therefore, based upon information and belief, plaintiffs allege:

(A) That the fingerprints of Timothy McVeigh (the person reported to have been responsible for the bombing of the A.P. Murrah Building) were reportedly found on a sales receipt or other documents evidencing the sale of 2,000 pounds of fertilizer grade ammonium nitrate to Terry Nichols, a known acquaintance of Timothy McVeigh's. That the ammonium nitrate fertilizer was sold by the Mid-Kansas Co-op in McPherson, Kansas to Terry Nichols.

(B) That the defendant manufactured, distributed and/or sold the ammonium nitrate fertilizer to the Mid-Kansas Co-op and it was allegedly resold to Terry Nichols by Mid-Kansas Co-op shortly before the bombing of the A.P. Murrah Building.

7

(C) That testing of explosives made with ammonium nitrate with fertilizer was carried out on the farm of Terry Nichols with the participation and/or knowledge of Timothy McVeigh. That there is believed to be evidence in the nature of said samples collected by law enforcement officers to suggest such ammonium nitrate fertilizer was not used on the Nichols' farm for fertilizer purposes but instead was used for building and testing bombs.

(D) That pieces of blue plastic containers believed to have contained the ammonium nitrate bomb which caused plaintiffs' injuries and damages and the damages of the class sought to be certified were found in and around the wreckage of the A.P. Murrah Building and were similar, if not identical, to blue plastic containers found at the farm of Terry Nichols.

(E) That Terry Nichols was in Oklahoma City, Oklahoma with Timothy McVeigh approximately three days prior to the bombing.

(F) That Timothy McVeigh was identified as one of the persons who rented the Ryder truck which contained the ammonium nitrate bomb which caused the damage to the plaintiffs.

(G) That it has been widely known in the industry which produces ammonium nitrate for fertilizer that such ammonium nitrate fertilizer is widely purchased by terrorists and other criminal elements who desire to cause injury or death through the use of so-called car or truck bombs

because ammonium nitrate is easily made into a highly volatile explosive due to its highly explosive potential.

(H) That terrorists and such others are unable to purchase other suitable explosives to use instead of ammonium nitrate fertilizer for car and truck bombs because permits are required for such purchases.

(I) That industrial grade ammonium nitrate is sold as an explosive by distributors of ammonium nitrate including this defendant.

(J) That fertilizer grade ammonium nitrate is easily converted to industrial grade ammonium nitrate.

(K) That the manufactures and distributors of fertilizer grade and industrial grade ammonium nitrate including this defendant knew or should have known for decades before the bombing complained of that law enforcement officials had been advising the industry of which defendant was and is a member that such ammonium nitrate fertilizer was so highly dangerous that it should not be manufactured and marketed without an additive which would reduce or eliminate its potential explosive nature and that it was the substance of choice of those building car and truck bombs.

(L) That members of defendant's industry knew or should have known by widely disseminated materials throughout the industry that its ammonium nitrate fertilizer was being purchased or was likely to be purchased for the purpose of making bombs and exploding them therefore injuring and damaging persons such as the plaintiffs and the class sought to be certified. Such law enforcement officials also advised the industry that more persons would be killed or injured by terrorist bombs made of fertilizer grade

9

ammonium nitrate if the industry failed to include the additive to reduce or eliminate the explosive potentials of the product.

(M) That there were technological and economically feasible additives which could have been added to fertilizer grade ammonium nitrate which would improve the fertilizer qualities but would reduce or eliminate the risk such product would be used in a bomb. Such a process was patented in the 1960 decade. Such processes have been employed in fertilizer grade ammonium nitrate in England, South Africa and perhaps other countries where the sale of such fertilizer grade ammonium nitrate is prohibited in the absence of such additives. It is believed this defendant and its grandfather corporation sold such fertilizer grade ammonium nitrate in such countries with an additive to reduce its explosive potential.

(N) That the technical literature available to the industry of which defendant was and is a member is replete with information that would put a reasonable manufacturer and supplier of fertilizer grade ammonium nitrate on notice that such manufactures and/or supplier's fertilizer grade of ammonium nitrate was likely or certain to be used to injure or damage persons such as the plaintiffs and the class sought to be certified in the absence of such additives.

(O) That no permit is required for terrorists or others to purchase fertilizer grade of ammonium nitrate which permitted Terry McVeigh who would not have been able to secure sufficient other explosive material suitable for

10

a car or truck bomb to possess the material necessary to test and make such an explosive bomb.

XXII.

The fertilizer grade of ammonium nitrate allegedly manufactured and sold by the defendant is defective and unreasonably dangerous, and its social utility outweighs its benefits and risk in the absence of the above additives.

XXIII.

The defendant was negligent by failing to include an additive to reduce the explosive potential of the fertilizer grade of ammonium nitrate.

XXIV.

The bomb which injured and damaged the plaintiffs was likely not to have been made or used if fertilizer grade ammonium nitrate had not been manufactured, sold and/or distributed by the defendant without such additive.

XXV.

That defendant by failing to add the additive was in complicity with all other manufacturers, distributors and sellers of fertilizer grade ammonium nitrate not to make fertilizer grade ammonium nitrate reasonably safe so that foreseeable bombings of the type which injured and damaged plaintiffs would not occur.

XXVI.

WHEREFORE, plaintiffs, individually and on behalf of all those similarly situated members of this proposed class, pray that this Court certify a class herein, appoint plaintiffs as representatives of the class, that defendant be summoned with a copy of the complaint and that defendant be cited to appear and answer for their alleged wrongful acts, and after due proceedings are had, including trial by jury, that judgment be rendered in plaintiffs' favor, on their behalf individually and all other similarly situated members of this proposed class and against defendant herein in an amount to compensate the plaintiffs and each member of the class for all damages to which they are entitled as per the facts to be proven at trial on the merits herein and according to all theories specifically pled or as applicable to the facts herein as determined by the Court.

Attorney Lien Claimed.
Jury Trial Requested.

_____
JOHNNIE L. COCHRAN, JR.
Law Offices of Johnnie L. Cochran, Jr.
4929 Wilshire Blvd., Ste. 1010
Los Angeles, CA  90010
(213) 931-6200

_____
JOHN M. MERRITT, OBA #6146
Merritt & Rooney, Inc.
P.O. Box 60708
Oklahoma City, OK  73146
(405) 236-2222

ATTORNEYS FOR THE PLAINTIFFS